UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JANE DOE ET AL** | **CASE NO. 6:21-CV-00430** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DESPALUNGUE DARROS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

## MEMORANDUM RULING AND ORDER

Before the Court is Plaintiffs' *Motion for Reconsideration, to Supplement the Record, and for Issuance of an Order* Nunc Pro Tunc *Declaring Service Valid* (Rec. Doc. 60), referred to the Court solely for a determination of whether service of process has been effected on the defendant. Considering the evidence, the law, and the arguments of the parties, and for the reasons fully explained below, the Court finds that the sole defendant, Edouard d'Espalungue, has been properly served.

### Factual Background

Plaintiffs, pseudonymous Jane Doe and her parents, filed this suit in February 2021 against Edouard d'Espalungue, a French national who allegedly raped Jane Doe while both were attending a college retreat. (Rec. Doc. 1). In July 2021, the Court granted Plaintiffs' request for an extension of time to effect service on d'Espalungue and ordered Plaintiffs to submit proof of French translation of the necessary documents for purposes of service. (Rec. Doc. 5). Plaintiffs complied and

provided an affidavit from Foss Baker, staff attorney for Ancillary Legal Corporation (ALC), attesting that the documents had been professionally translated into French and sent to the Central Authority in France. According to Mr. Baker and Plaintiffs' counsel's affidavits, the French police spoke with d'Espalungue and arranged two meetings for service of the complaint and related documents; however, d'Espalungue failed to appear and the police were unable to accomplish service. (Rec. Doc. 12-1; 12-2). Following a court status conference, Plaintiffs moved for entry of default, which the court entered. (Rec. Doc. 11; 12; 13).

Thereafter, the Court held a two-day evidentiary hearing commencing on October 12, 2022 on Plaintiffs' motion for default judgment. (Rec. Doc. 14; 15; 21; 22; 28; 29). In the meantime, the Court granted Plaintiffs' motion for service of the default hearing documents and ordered the Clerk of Court to send the pertinent documents to d'Espalungue by International Registered Mail at two different addresses. (Rec. Doc. 17). The mail to both addresses was returned as unclaimed. (Rec. Doc. 19; 25). Subsequent notices mailed to the first address, 65 Avenue Marceau, were likewise returned as unclaimed. (Rec. Doc. 31; 33; 40; 41; 42; 44; 47; 53; 54; 55; 57).

Following the evidentiary hearing, on June 27, 2023, the Court found that Plaintiffs failed to properly effect service on d'Espalungue, vacated the entry of default, and granted Plaintiffs 90 additional days to effect proper service or

otherwise demonstrate continued reasonable diligence in attempting to serve d'Espalungue. (Rec. Doc. 56). Pursuant to that order, Plaintiffs filed the instant motion, with voluminous additional evidence regarding service efforts, seeking an order that their service was valid.

## Applicable Law

This Court adopts and incorporates by reference the District Court's prior ruling setting forth the law applicable to service on a foreign defendant through the Hague Convention. (Rec. Doc. 56, p. 15-20). In short, F.R.C.P. Rule 4(f) provides two methods for serving a foreign individual as applicable to this case: in accordance with the Hague Convention (Rule 4(f)(1)); or by other means not prohibited by international agreement, as the court orders (Rule 4(f)(3)). Plaintiffs submit evidence that the relevant pleadings have been properly served either by mail or email.

### I. Service by Mail under the Hague Convention.

When serving through the Hague Convention, the serving party must request service through the foreign country's Central Authority, which then must complete service according to its internal laws and provide the applicant with a certificate explaining how, where, and when service was made, or why service was not completed. Article 15 contemplates two situations. The first paragraph addresses obtaining a default judgment when the requesting party submits proof of service; the second paragraph addresses obtaining a default judgment when the requesting party

does not present proof of service. When the requesting party does not provide proof of service, the court may enter a default judgment if:

> (i) "the document was transmitted by one of the methods provided for in this convention;" (ii) at least six months have passed since the documents were sent to the defendant; and (iii) "no certificate of *any kind* has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed."

Rec. Doc. 56 citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 15. (emphasis added).

The District Court found that Plaintiffs had received an "official certification" from France's Central Authority stating that d'Espalungue "did not reply to the request of the Police to appear before them," deemed a certificate of non-service. (Rec. Doc. 12-2, p. 2). Because Plaintiffs had received a certificate of *some* kind, the Court found that Plaintiffs were not entitled to a default judgment pursuant to the foregoing provision, the second paragraph of Art. 15. (Rec. Doc. 56, p. 19). Because the second paragraph of Art. 15 does not apply, Plaintiffs must rely upon the first paragraph of Art. 15 in order to obtain a default judgment. This provision provides

> that a member state may enter a default judgment if service has been completed and the defendant fails to appear if: (i) "the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory;" or (ii) "the document was actually delivered to the defendant or to his residence by another method provided for in the convention;" and "in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend."

Rec. Doc. 56, p. 16, citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 15.

"[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284, 137 S. Ct. 1504, 1513, 197 L. Ed. 2d 826 (2017). France has not objected to service by mail. (Rec. Doc. 6-1, p. 4. See also Rec. Doc. 60-13, p. 6). Although the Federal Rules of Civil Procedure do not explicitly authorize service by mail, F.R.C.P. Rule 4(e) authorizes service upon an individual according to the applicable state law. (See also *Water Splash, Inc.*, 581 U.S. at 284). Louisiana's long-arm statute authorizes service on non-residents via registered or certified mail. La. Stat. Ann. § 13:3204(A). At Plaintiffs' request, in July 2022, the Clerk of Court sent the pleadings (including the French-translated complaint as incorporated in Plaintiffs' motion for default) by International Registered Mail to Defendant at each of two addresses. (Rec. Doc. 17; 18). Both were returned as "unclaimed recorded delivery." (Rec. Doc. 19; 25). Under Louisiana law, service by registered mail returned as unclaimed constitutes sufficient service, especially where the evidence shows the defendant is avoiding service. *McFarland v. Dippel*, 1999-0584 (La. App. 1 Cir. 3/31/00), 756 So. 2d 618, 622, *writ denied,* 2000-1794 (La. 9/29/00), 770 So. 2d 349 ("[W]e conclude where the facts demonstrate a litigant chose to ignore notice of a certified letter, and refused to claim the letter at the post office, that conduct is tantamount to a refusal of service

5

and cannot defeat otherwise valid service.") See also *HTS, Inc. v. Seahawk Oil & Gas, Inc.,* 2004-892 (La. App. 3 Cir. 12/8/04), 889 So. 2d 442, 444–45. Compare *Wood v. Hackler*, 52,791 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1136, 1141, *writ denied,* 2019-01469 (La. 12/10/19), 285 So. 3d 490, wherein the court found long-arm service was not perfected by mailing absent evidence that the pleadings were sent to the defendant's actual, correct address. In that case, the plaintiffs used an address they found online, which the court found insufficient. *Id*.

In this case, Plaintiffs submitted credible evidence that as of February 8, 2021 d'Espalungue was residing at 65 Avenue Marceau with his parents. Thereafter, the evidence indicates that his mother terminated a pre-existing lease on her rental property at 10 Plage des Boulistes Canon so that he could occupy it. (Rec. Doc. 60-9, p. 2.) The Clerk of Court sent the pleadings to each of these addresses. The Court finds this is credible evidence of Defendant's actual, correct address. The Court also finds Plaintiffs have submitted sufficient evidence that d'Espalungue knew about this lawsuit and has been avoiding service. See e.g. Rec. Doc. 60-3; -4; -5, confirming that Defendant's counsel of record in related state criminal proceedings was aware of this civil suit; Rec. Doc. 12-1; -2 in reference to Rec. Doc. 60-11 regarding French police efforts to serve Defendant; and Rec. Doc. 60-16, p. 6-9, evidencing unrelated French court proceedings involving Defendant's mother's rental property, where the tenants believed Defendant intended to escape prosecution

for the events alleged in this suit. Further, as discussed below, Plaintiffs have submitted evidence that d'Espalungue received email correspondence with these pleadings through his attorney(s) or personally. Plaintiffs' newly submitted evidence amply supports that Defendant has been avoiding service. Accordingly, the Court finds that service by mail was proper, despite having been "unclaimed."

Under the first paragraph of Art. 15, the Court further finds that service was perfected with sufficient time to allow Defendant to defend. Per Court order and Plaintiffs' request, the Clerk of Court mailed the pleadings, including the order setting the evidentiary hearing for October 12, 2022, by International Registered Mail on July 19, 2022. (Rec. Doc. 18). The first, sent to the 65 Avenue Marceau address, was returned to this Court unclaimed on September 26, 2022. (Rec. Doc. 19). Considering that Defendant was on notice of this lawsuit at least as of July 2022 and had in fact retained criminal counsel in Louisiana related to the incident by February 2021, the Court finds that he had sufficient time to defend himself. Instead, Defendant chose to abscond and is now thwarting service.

## II. Alternative Service by Email.

As an alternative, Plaintiffs maintain that they have properly served Defendant by email. As the Fifth Circuit explained, service by email is potentially available as a means of service *alternative* to service under the Hague Convention:

> Rule 4 permits service on foreign defendants "by any internationally agreed means of service that is reasonably calculated to

7

give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" *and* "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3). Service here was court-ordered email service under Rule 4(f)(3), and Gotech has not shown that such service is prohibited by international agreement. Service was therefore proper. Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).

*Nagravision SA v. Gotech Int'l Tech. Ltd.,* 882 F.3d 494, 498 (5th Cir. 2018).

One court further explained that alternative service by email under Rule 4(f)(3) may be especially justified when the plaintiff has unsuccessfully attempted to serve under the Hague Convention:

> Attempting service under the Hague Convention is not a prerequisite to requesting alternative service. *See Affinity* 2014 WL 11342502, at *1 ("A plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)."). However, district courts are more likely to permit alternative service by email if service in compliance with the Hague Convention was attempted. *See, e.g. WhosHere, Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (permitting service by email after plaintiff's attempts to serve Turkish defendant via the Hague Convention were unsuccessful); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *2-4 (S.D.N.Y. Mar. 7, 2013) (permitting service by email and through social media after plaintiff's attempts to serve Indian defendant via the Hague Convention were unsuccessful); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, No. 15 Civ. 1668 (JSR), 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (permitting email service after plaintiff's attempts to serve Chinese defendant via the Hague Convention were unsuccessful).

*Terrestrial Comms LLC v. NEC Corp.,* No. 6:19-CV-00597-ADA, 2020 WL 3270832, at *3 (W.D. Tex. June 17, 2020).

Plaintiffs submitted voluminous evidence of their attempts to serve d'Espalungue, not only through Hague Convention requirements, but also through email beginning in July 2022 and throughout the following year into July 2023. Plaintiffs' evidence shows that the documents were emailed to multiple addresses, including d'Espalungue's former Louisiana criminal attorney (Mike Small), his French attorney, and directly to d'Espalungue at two different personal email addresses through which he previously communicated with the Louisiana criminal court. (Rec. Doc. 60-8). Most recently, on July 12, 2023, three months before the default hearing, Plaintiffs emailed the documents in English and in French to six different email addresses (one each to d'Espalungue's French attorney and former Louisiana criminal attorney, and to each of two confirmed personal accounts, as well as to two other possible addresses).

The axiom, "It is better to beg forgiveness than ask permission," is applicable. Although the Court did not initially specifically authorize service by email under Rule 4(f)(3), following the evidentiary hearing, the Court granted Plaintiffs 90 additional days to effect service or otherwise demonstrate continued reasonable diligence in attempting to serve Defendant. (Rec. Doc. 56, p. 21). The Court finds

that Plaintiffs have more than diligently attempted to serve d'Espalungue who has nonetheless continued to evade service.

## Conclusion

For the reasons discussed herein, based on Plaintiffs' newly submitted evidence regarding service, the Court finds that Plaintiffs properly served d'Espalungue either by mail under the Hague Convention or by email under Rule 4(f)(3). Accordingly,

IT IS ORDERED that service on Defendant is hereby deemed valid under Rule 4(f)(3) of the Federal Rules of Civil Procedure.[1]

THUS DONE in Chambers, Lafayette, Louisiana on this 14th day of August, 2023.



CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE

---

[1] Pursuant to the Notice of Transfer in the record of these proceedings, this Memorandum Ruling is limited to its finding that service of process has been effected on the defendant. This Memorandum Ruling makes no findings or conclusions regarding Plaintiffs' Motion for Reconsideration of the District Judge's Memorandum Order vacating the Clerk of Court's Entry of Default and denying the Plaintiff's Motion for Default Judgment.