UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| **JANE DOE ET AL** | **CASE NO. 6:21-CV-00430** |
| **VERSUS** | **JUDGE DAVID C. JOSEPH** |
| **DESPALUNGUE DARROS** | **MAGISTRATE JUDGE CAROL B. WHITEHURST** |

### REVISED MEMORANDUM RULING AND ORDER

The Court provides this revised Memorandum and Ruling and Order addressing Plaintiffs' *Motion for Reconsideration, to Supplement the Record, and for Issuance of an Order* Nunc Pro Tunc *Declaring Service Valid* (Rec. Doc. 60). This Court previously found that the sole defendant, Edouard d'Espalungue, has been properly served. (Rec. Doc. 62). The Court now clarifies the date on which service was perfected as July 19, 2022, and reinstates the Clerk of Court's Entry of Default retroactively to October 18, 2022.

### Factual Background

Plaintiffs, pseudonymous Jane Doe and her parents, filed this suit in February 2021 against Edouard d'Espalungue, a French national who allegedly raped Jane Doe while both were attending a college retreat. (Rec. Doc. 1). In July 2021, the Court granted Plaintiffs' request for an extension of time to effect service on d'Espalungue and ordered Plaintiffs to submit proof of French translation of the

necessary documents for purposes of service. (Rec. Doc. 5). Plaintiffs complied and provided an affidavit from Foss Baker, staff attorney for Ancillary Legal Corporation (ALC), attesting that the documents had been professionally translated into French and sent to the Central Authority in France. According to Mr. Baker and Plaintiffs' counsel's affidavits, the French police spoke with d'Espalungue and arranged two meetings for service of the complaint and related documents; however, d'Espalungue failed to appear and the police were unable to accomplish service. (Rec. Doc. 12-1; 12-2). Following a court status conference, Plaintiffs moved for entry of default, which the court entered on July 6, 2022. (Rec. Doc. 11; 12; 13).

Thereafter, the Court held a two-day evidentiary hearing commencing on October 12, 2022, on Plaintiffs' motion for default judgment. (Rec. Doc. 14; 15; 21; 22; 28; 29). In the meantime, the Court granted Plaintiffs' motion for service of the default hearing documents. (Rec. Doc. 17). Pursuant to that order, on July 19, 2022, the Clerk of Court mailed the pertinent documents to d'Espalungue by International Registered Mail at two different addresses. (Rec. Doc. 18). The mail to both addresses was returned as unclaimed. (Rec. Doc. 19; 25). Subsequent notices mailed to the first address, 65 Avenue Marceau, were likewise returned as unclaimed. (Rec. Doc. 31; 33; 40; 41; 42; 44; 47; 53; 54; 55; 57).

Following the October 12, 2022 evidentiary hearing, on June 27, 2023, the Court found that Plaintiffs failed to properly effect service on d'Espalungue, vacated

the entry of default, and granted Plaintiffs 90 additional days to effect proper service or otherwise demonstrate continued reasonable diligence in attempting to serve d'Espalungue. (Rec. Doc. 56). Pursuant to that order, Plaintiffs filed the instant motion, with voluminous additional evidence regarding service efforts, seeking an order that their service was valid.

## Applicable Law

This Court adopts and incorporates by reference the District Court's prior ruling setting forth the law applicable to service on a foreign defendant through the Hague Convention. (Rec. Doc. 56, p. 15-20). In short, F.R.C.P. Rule 4(f) provides two methods for serving a foreign individual as applicable to this case: in accordance with the Hague Convention (Rule 4(f)(1)); or by other means not prohibited by international agreement, as the court orders (Rule 4(f)(3)). Plaintiffs submit evidence that the relevant pleadings have been properly served either by mail or email.

### I. Service by Mail under the Hague Convention.

When serving through the Hague Convention, the serving party must request service through the foreign country's Central Authority, which then must complete service according to its internal laws and provide the applicant with a certificate explaining how, where, and when service was made, or why service was not completed. Article 15 contemplates two situations. The first paragraph addresses obtaining a default judgment when the requesting party submits proof of service; the

second paragraph addresses obtaining a default judgment when the requesting party does not present proof of service. When the requesting party does not provide proof of service, the court may enter a default judgment if:

> (i) "the document was transmitted by one of the methods provided for in this convention;" (ii) at least six months have passed since the documents were sent to the defendant; and (iii) "no certificate of *any kind* has been received, even though every reasonable effort has been made to obtain it through the competent authorities of the State addressed."

Rec. Doc. 56 citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 15. (emphasis added).

The District Court found that Plaintiffs had received an "official certification" from France's Central Authority stating that d'Espalungue "did not reply to the request of the Police to appear before them," deemed a certificate of non-service. (Rec. Doc. 12-2, p. 2). Because Plaintiffs had received a certificate of *some* kind, the Court found that Plaintiffs were not entitled to a default judgment pursuant to the foregoing provision, the second paragraph of Art. 15. (Rec. Doc. 56, p. 19). Because the second paragraph of Art. 15 does not apply, Plaintiffs must rely upon the first paragraph of Art. 15 in order to obtain a default judgment. This provision provides:

> that a member state may enter a default judgment if service has been completed and the defendant fails to appear if: (i) "the document was served by a method prescribed by the internal law of the State addressed for the service of documents in domestic actions upon persons who are within its territory;" or (ii) "the document was actually delivered to the defendant or to his residence by another method provided for in the convention;" and "in either of these cases the service or the delivery was effected in sufficient time to enable the defendant to defend."

4

Rec. Doc. 56, p. 16, citing 20 U.S.T. 362, T.I.A.S. 6638, Art. 15.

"[I]n cases governed by the Hague Service Convention, service by mail is permissible if two conditions are met: first, the receiving state has not objected to service by mail; and second, service by mail is authorized under otherwise-applicable law." *Water Splash, Inc. v. Menon*, 581 U.S. 271, 284, 137 S. Ct. 1504, 1513, 197 L. Ed. 2d 826 (2017). France has not objected to service by mail. (Rec. Doc. 6-1, p. 4. See also Rec. Doc. 60-13, p. 6). Although the Federal Rules of Civil Procedure do not explicitly authorize service by mail, F.R.C.P. Rule 4(e) authorizes service upon an individual according to the applicable state law. (See also *Water Splash, Inc.*, 581 U.S. at 284). Louisiana's long-arm statute authorizes service on non-residents via registered or certified mail. La. Stat. Ann. § 13:3204(A). At Plaintiffs' request and pursuant to court order, on July 19, 2022, the Clerk of Court sent the pleadings (including the French-translated complaint as incorporated in Plaintiffs' motion for default) by International Registered Mail to Defendant at each of two addresses. (Rec. Doc. 17; 18). Both were returned as "unclaimed recorded delivery." (Rec. Doc. 19; 25). Under Louisiana law, service by registered mail returned as unclaimed constitutes sufficient service, especially where the evidence shows the defendant is avoiding service. *McFarland v. Dippel*, 1999-0584 (La. App. 1 Cir. 3/31/00), 756 So. 2d 618, 622, *writ denied,* 2000-1794 (La. 9/29/00), 770 So. 2d 349 ("[W]e conclude where the facts demonstrate a litigant chose to ignore notice

of a certified letter, and refused to claim the letter at the post office, that conduct is tantamount to a refusal of service and cannot defeat otherwise valid service.") See also *HTS, Inc. v. Seahawk Oil & Gas, Inc.,* 2004-892 (La. App. 3 Cir. 12/8/04), 889 So. 2d 442, 444–45. Compare *Wood v. Hackler*, 52,791 (La. App. 2 Cir. 8/14/19), 276 So. 3d 1136, 1141, *writ denied,* 2019-01469 (La. 12/10/19), 285 So. 3d 490, wherein the court found long-arm service was not perfected by mailing absent evidence that the pleadings were sent to the defendant's actual, correct address. In that case, the plaintiffs used an address they found online, which the court found insufficient. *Id.*

In this case, Plaintiffs submitted credible evidence that as of February 8, 2021, d'Espalungue was residing at 65 Avenue Marceau with his parents. Thereafter, the evidence indicates that his mother terminated a pre-existing lease on her rental property at 10 Plage des Boulistes Canon so that he could occupy it. (Rec. Doc. 60-9, p. 2.) The Clerk of Court sent the pleadings to each of these addresses. The Court finds this is credible evidence of Defendant's actual, correct address. The Court also finds Plaintiffs have submitted sufficient evidence that d'Espalungue knew about this lawsuit and has been avoiding service. See e.g. Rec. Doc. 60-3; -4; -5, confirming that Defendant's counsel of record in related state criminal proceedings was aware of this civil suit; Rec. Doc. 12-1; -2 in reference to Rec. Doc. 60-11 regarding French police efforts to serve Defendant; and Rec. Doc. 60-16, p. 6-9,

evidencing unrelated French court proceedings involving Defendant's mother's rental property, where the tenants believed Defendant intended to escape prosecution for the events alleged in this suit. Further, as discussed below, Plaintiffs have submitted evidence that d'Espalungue received email correspondence with these pleadings through his attorney(s) or personally. Plaintiffs' newly submitted evidence amply supports that Defendant has been avoiding service. Accordingly, the Court finds that service by mail was proper, despite having been "unclaimed."

Under the first paragraph of Art. 15, the Court further finds that service was perfected with sufficient time to allow Defendant to defend. Considering that Defendant was on notice of this lawsuit at least as of July 6, 2022, and had in fact retained criminal counsel in Louisiana related to the incident by February 2021, the Court finds that he had sufficient time to defend himself at an October 12, 2022 hearing.[1] Instead, Defendant chose to abscond and thwart service.

## II. Alternative Service by Email.

As an alternative, Plaintiffs maintain that they have properly served Defendant by email. As the Fifth Circuit explained, service by email is potentially available as a means of service *alternative* to service under the Hague Convention:

---

[1] This finding is limited solely to the issue of whether service by mail was proper under the first paragraph of Art. 15. As discussed below, Plaintiffs prematurely sought a default judgment. Thus, while service by mail is deemed proper under these circumstances and Art. 15, that does not dictate that a default judgment was proper *at that time*.

> Rule 4 permits service on foreign defendants "by any internationally agreed means of service that is reasonably calculated to give notice, such as those authorized by the Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents" *and* "by other means not prohibited by international agreement, as the court orders." Fed. R. Civ. P. 4(f)(1), (3). Service here was court-ordered email service under Rule 4(f)(3), and Gotech has not shown that such service is prohibited by international agreement. Service was therefore proper. Overlooking Rule 4(f)(3) entirely, Gotech argues that the service did not comply with the Hague Convention and Rule 4(f)(1). This argument misses the mark because service was not effected pursuant to the Hague Convention, and that agreement does not displace Rule 4(f)(3).

*Nagravision SA v. Gotech Int'l Tech. Ltd.,* 882 F.3d 494, 498 (5th Cir. 2018).

One court further explained that alternative service by email under Rule 4(f)(3) may be especially justified when the plaintiff has unsuccessfully attempted to serve under the Hague Convention:

> Attempting service under the Hague Convention is not a prerequisite to requesting alternative service. *See Affinity* 2014 WL 11342502, at *1 ("A plaintiff does not have to attempt to effect service under Rule 4(f)(1) or Rule 4(f)(2) prior to requesting the authorization of an alternative method of service pursuant to Rule 4(f)(3)."). However, district courts are more likely to permit alternative service by email if service in compliance with the Hague Convention was attempted. *See, e.g. WhosHere, Inc. v. Orun*, No. 1:13-cv-00526-AJT-TRJ, 2014 WL 670817, at *3 (E.D. Va. Feb. 20, 2014) (permitting service by email after plaintiff's attempts to serve Turkish defendant via the Hague Convention were unsuccessful); *F.T.C. v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *2-4 (S.D.N.Y. Mar. 7, 2013) (permitting service by email and through social media after plaintiff's attempts to serve Indian defendant via the Hague Convention were unsuccessful); *Sulzer Mixpac AG v. Medenstar Indus. Co.*, No. 15 Civ. 1668 (JSR), 312 F.R.D. 329, 332 (S.D.N.Y. 2015) (permitting email service after plaintiff's attempts to serve Chinese defendant via the Hague Convention were unsuccessful).

*Terrestrial Comms LLC v. NEC Corp.,* No. 6:19-CV-00597-ADA, 2020 WL 3270832, at *3 (W.D. Tex. June 17, 2020).

Plaintiffs submitted voluminous evidence of their attempts to serve d'Espalungue, not only through Hague Convention requirements, but also through email beginning in July 2022, and throughout the following year into July 2023. Plaintiffs' evidence shows that the documents were emailed to multiple addresses, including d'Espalungue's former Louisiana criminal attorney (Mike Small), his French attorney, and directly to d'Espalungue at two different personal email addresses through which he previously communicated with the Louisiana criminal court. (Rec. Doc. 60-8). Most recently, on July 12, 2023, three months before the default hearing, Plaintiffs emailed the documents in English and in French to six different email addresses (one each to d'Espalungue's French attorney and former Louisiana criminal attorney, and to each of two confirmed personal accounts, as well as to two other possible addresses).

The axiom, "It is better to beg forgiveness than ask permission," is applicable. Although the Court did not initially specifically authorize service by email under Rule 4(f)(3), following the evidentiary hearing, the Court granted Plaintiffs 90 additional days to effect service or otherwise demonstrate continued reasonable diligence in attempting to serve Defendant. (Rec. Doc. 56, p. 21). The Court finds that Plaintiffs have more than diligently attempted to serve d'Espalungue who has

9

nonetheless continued to evade service; however, as discussed below, the Court should not consider the date of Plaintiffs' initial emails, July 6, 2022, as the effective date of service.

### III. Date of Perfected Service and Entry of Default.

Having found that service was proper by mail under Rule 4(f)(1) and the Hague Convention and by email under Rule 4(f)(3), the Court must determine the date upon which service was effected. When perfecting service by mail under the Louisiana long arm statute, "all that is necessary to constitute service upon a non-resident under the long-arm statute is that counsel for the plaintiff send a certified copy of the citation and petition in the suit to the defendant by registered or certified mail … There is no requirement under § 3204 for a signed return receipt." *Wood v. Hackler*, 276 So. 3d at 1141. See also *Dupree v. Torin Jacks, Inc.,* No. CIV.A. 08-CV-1648, 2009 WL 366332, at *2 (W.D. La. Feb. 12, 2009) ("Louisiana law … suggests that service is completed before the filing of [] an affidavit [of service], just as service by the sheriff is completed when the papers are tendered to the defendant and not when the sheriff later files a return of service.").

The Clerk of Court mailed the documents on July 19, 2022.[2] (Rec. Doc. 60-8). Thus, the Court finds service was complete on or before July 19, 2022.

---

[2] The official Court docket contains a non-public entry verifying that the Clerk of Court sent the pleadings on July 19, 2022 by International Registered Mail. See Rec. Doc. 18.

10

Regarding service by email, Plaintiffs submitted evidence that they first emailed the documents to d'Espalungue and his counsel on July 6, 2022. Although the Court finds service by email was permissible, Plaintiffs had not yet sought leave of court to serve by email, as required by Rule 4(f)(3), such that the Court declines to find service was perfected on July 6, 2022, the same date on which the Clerk entered default. By that time, Plaintiffs had expended considerable time and money attempting to serve d'Espalungue pursuant to the Hague Convention by retaining Ancillary Legal Corporation to complete service. (Rec. Doc. 6; 6-1). Staff Attorney Foss Baker attested that the France Central Authority received the French-translated documents on July 22, 2021. (Rec. Doc. 6-1, ¶6). On February 28, 2022, the French authorities issued a service certificate (translated to English on April 21, 2022) indicating they were unable to serve d'Espalungue. (Rec. Doc. 12; 12-1). Thus, at the time of the Clerk's entry of default on July 6, 2022, d'Espalungue had not been properly served either by actual delivery under the Hague Convention or by email. He was properly served by mail on July 19, 2022, after which he had 90 days, or until October 17, 2022, to file responsive pleadings. F.R.C.P. Rule 12(a)(1)(A)(ii). d'Espalungue having failed to answer within that time, Plaintiffs were entitled to entry of default under F.R.C.P. Rule 55(a) by October 18, 2022. Thereafter, Plaintiffs were entitled to request a hearing and default judgment after at least seven days written notice to d'Espalungue. F.R.C.P. Rule 55(b)(2). Unfortunately,

11

Plaintiffs had prematurely sought a default judgment based upon their erroneous indication that d'Espalungue had been properly served earlier.[3]

## Conclusion

For the reasons discussed herein, based on Plaintiffs' newly submitted evidence regarding service, the Court finds that d'Espalungue has been properly served by mail under the Hague Convention. The Court further finds that service was perfected on July 19, 2022 when the Clerk of Court sent the documents by International Registered Mail. When d'Espalungue failed to answer within 90 days, by October 17, 2022, Plaintiffs were entitled to an entry of default. Unfortunately, even if the entry of default is retroactively entered based on that date, the evidentiary hearing on Plaintiffs' motion for default judgment was premature.[4] Accordingly,

IT IS ORDERED that service on Defendant is hereby deemed valid under Rule 4(f)(3) of the Federal Rules of Civil Procedure as of July 19, 2022.

---

[3] Even if the Court established the service date as July 6, 2022, d'Espalungue had 90 days, or until October 4, 2022, to respond before entry of default was warranted. Therefore, assuming an entry of default on October 5, 2022, and seven days written notice required by Rule 55(b)(2), the October 12, 2022 hearing was at least one day too early.

[4] While the Court notes that this is a problem of plaintiffs' counsels' own making, the Court is sympathetic to plaintiffs in that Jane Doe may have to re-testify regarding obviously sensitive facts. However, if Defendant's conduct in these proceedings thus far is indicative of his defense strategy (that is, to abscond, evade, and ignore), the District Court may be able to re-set the hearing within the time delays of Rule 55(b) and take judicial notice of the previously submitted evidence without the need for duplicative testimony.

IT IS FURTHER ORDERED that the Clerk of Court enter a notice of default retroactive to October 18, 2022.

IT IS FURTHER ORDERED that service by email is hereby authorized for all future pleadings pursuant to F.R.C.P. Rule 4(f)(3).

THUS DONE in Chambers, Lafayette, Louisiana on this 17th day of August, 2023.

*[signature]*
CAROL B. WHITEHURST
UNITED STATES MAGISTRATE JUDGE